UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KIMOTHY WYNN,<br><br>                    Plaintiff,<br><br>     v.<br><br>WASHINGTON DEPARTMENT OF CORRECTIONS, BERNIE WARNER, STEVE SINCLAIR, MAGGIE MILLER-STOUT, SGT. DILDAY, DON J. DESHAZIER, and MIKE MYER,<br><br>                    Defendants. | No. C11-5590 BHS/KLS<br><br>**REPORT AND RECOMMENDATION**<br>**Noted for:  November 2, 2012** |

Before the Court is the Motion to Dismiss of Defendants Department of Corrections (DOC), Bernie Warner, Steve Sinclair, Maggie Miller-Stout, Sgt. Dilday, Don Deshazer, and Mike Meyer.  Defendants move to dismiss the Complaint of Plaintiff Kimothy Wynn on six grounds:  1) failure to state a claim upon which relief can be granted; 2) failure to exhaust administrative remedies; 3) Eleventh Amendment immunity; 4) failure to establish personal participation of certain Defendants; 5) qualified immunity; and 6) failure to establish entitlement to injunctive relief.  ECF No. 27.

On August 9, 2012, Defendants served Plaintiff with a "*Pro Se* Prisoner Dispositive Motion Notice" consistent with *Woods v. Carey*, 684 F.3d 934, 934 (9th Cir. 2012).  ECF No. 27-3. Plaintiff did not file any papers in opposition to Defendants' motion to dismiss.  Pursuant to CR 7(b)(2), his failure to do so may be considered by the Court as an admission that Defendants' Motion to Dismiss has merit.

REPORT AND RECOMMENDATION - 1

Having carefully considered the motion and balance of the record, the Court recommends that Plaintiff's complaint be dismissed without prejudice as to his claims that were grievable under the DOC grievance system. That includes all of his claims except for his property claim. His property claim may be dismissed as legally insufficient because there is an adequate post-deprivation state remedy.

The Court does not reach the remainder of Defendants' stated alternative grounds for dismissal because once it has been determined that a suit filed by a prisoner must be dismissed for failure to exhaust, a district court lacks discretion to resolve those claims on the merits.

**BACKGROUND**

Plaintiff Kimothy Wynn filed his *pro se* civil rights complaint under 42 U.S.C. §1983 on July 28, 2011. ECF No. 6. Mr. Wynn filed suit against the above named Defendants in both their individual and official capacities as state employees. *Id.*, at ¶10. At all times relevant to his Complaint, Mr. Wynn was incarcerated either at the Airway Heights Corrections Center (AHCC) or the Washington State Penitentiary (WSP). ECF No. 6.

Mr. Wynn alleges that: (1) he was falsely accused of stealing property from the property room where he worked (ECF No. 6 at ¶12); (2) he was denied witness statements because Defendants successfully conspired to pressure a witness into altering her statement (ECF No. 6 at ¶17); (3) he was deprived of his personal property by Defendants (ECF No. 6 at ¶21); and (4) in this process, Defendants violated his rights under the First, Eighth, and Fourteenth Amendments (ECF No. 6 at ¶27).

Mr. Wynn seeks damages to include: declaratory relief; injunctive relief against a non-party (Eldon Vail) and all Defendants except Defendant Warner; $35,000 in compensatory

REPORT AND RECOMMENDATION - 2

damages against each defendant, jointly and severally; $1,500 against each defendant as punitive damages; costs; and equitable relief. ECF No. 6 at 14.

## STATEMENT OF FACTS

Mr. Wynn was employed at the AHCC property room under the supervision of Sergeant Dilday at the time all events in his complaint are alleged to have taken place. ECF No. 6 at ¶11. On March 22, 2010 Sergeant Dilday filed an Initial Serious Infraction Report accusing Mr. Wynn of violation of WAC 137-25-030(555) "theft of property or possession of stolen property." On April 14, 2010 a hearing was held on the violation and Mr. Wynn was found not guilty. ECF No. 6 at ¶13. Based on this hearing and alleged events before and after it, Mr. Wynn makes a number of factual allegations and legal claims.

**A.   Defendant Warner**

Mr. Wynn's sole allegation against Defendant Warner, Secretary of the Department of Corrections, is that he is "legally responsible for the overall operation of the Departments and each Institution under its jurisdiction, including WSP". ECF No. 6 at ¶4.

**B.   Defendant Sinclair**

Mr. Wynn specifically alleges that Defendant Sinclair, as Superintendent of the Washington State Penitentiary (WSP), is legally responsible for both the operations at WSP as well as the welfare of all WSP inmates. ECF No. 6 at ¶5. Mr. Wynn further alleges that it was Defendant Sinclair's duty to be aware that WSP Property Room Sergeant Myers was violating "Mr. Wynn's rights" and DOC Policy 440.000 and that he should have "resolved matters accordingly". ECF No. 6 at ¶23.

REPORT AND RECOMMENDATION - 3

### C. Defendant Miller-Stout

Mr. Wynn specifically alleges that Defendant Miller-Stout, as Superintendent of the Airway Heights Corrections Center (AHCC), is legally responsible for both the operations at AHCC as well as the welfare of all AHCC inmates. ECF No. 6 at ¶6. Mr. Wynn further alleges that it was Defendant Miller-Stout's duty to be aware of the actions of her staff, that she took no action to correct staff misconduct which was contrary to her duty to recognize that her staff was violating "Mr. Wynn's rights" and to "resolve matters accordingly". ECF No. 6 at ¶24.

### D. Defendant Dilday

Mr. Wynn alleges that AHCC property room supervisor, Defendant Dilday, ordered Ms. Farmer to monitor Mr. Wynn's activities upon suspicion of theft, and then was later informed by Ms. Farmer that she did not think Mr. Wynn was a thief. ECF No. 6 at ¶¶14 through 16. Mr. Wynn further alleges that on April 14, 2010 Defendant Dilday filed a false "555" infraction against Mr. Wynn, which accused Mr. Wynn of stealing items from the AHCC property room. ECF No. 6 at ¶¶7, 11, 12, 14. Lastly, Mr. Wynn alleges that Defendant Dilday learned from Defendant DeShazer, the AHCC disciplinary hearing officer, that Ms. Farmer submitted a witness statement directly to Mr. Wynn, and that Ms. Farmer changed her witness statement under force and duress from Defendant Dilday (ECF No. 6 at ¶16) and that Defendant Dilday was responsible for Mr. Wynn's loss of property by transferring Mr. Wynn's property to WSP. ECF No. 6 at ¶19.

### E. Defendant DeShazer

Mr. Wynn specifically alleges that Defendant DeShazer was the AHCC Disciplinary Hearing Officer and a Lieutenant (ECF No. 6 at ¶8); Defendant DeShazer informed Defendant Dilday that Ms. Farmer submitted a witness statement directly to Mr. Wynn (ECF No. 6 at ¶16),

REPORT AND RECOMMENDATION - 4

the evidence presented by Mr. Wynn included testimony by "Staff", Farmer and Claire (ECF No. 6 at ¶14), and that on or about April 14, 2010 Defendant DeShazer found no evidence to convict Mr. Wynn of 555 for theft (ECF No. 6 at ¶13).

### F. Defendant Meyer

Mr. Wynn specifically alleges that Defendant Meyer was the WSP Property Room Supervisor and a Sergeant (ECF No. 6 at ¶9), deprived Mr. Wynn of his property at WSP which had been transferred to WSP from AHCC (ECF No. 6 at ¶21), asked Mr. Wynn for proof of ownership, and then destroyed his property purportedly in accordance with DOC Policy 440.000 (ECF No. 6 at ¶22).

### G. Allegations Regarding Each Defendant

Mr. Wynn generally alleges as to all Defendants that they deny the existence of more than one email from Ms. Farmer. ECF No. 6 at ¶18. Mr. Wynn further alleges that all Defendants violated Mr. Wynn's rights under the First, Eighth and Fourteenth Amendments. ECF No. 6 at ¶27.

### H. Due Process / Property Claim

Mr. Wynn received two written 30-day notices informing him that rejected items from his claimed personal property would be disposed of in accordance with DOC 440.000. ECF No. 6-1 at 50-51. Mr. Wynn appealed the denial of his request to return certain property on May 23, 2011. ECF No. 6-1 at 51, 54 and 56. In his written response to Plaintiff dated May 23, 2011, Lieutenant Barker wrote that those items for which Mr. Wynn provided proof of ownership were returned to him while those for which he did not provide proof of ownership were deemed contraband and disposed of. ECF No. 6-1 at 54. Mr. Wynn received Lieutenant Barker's written

REPORT AND RECOMMENDATION - 5

decision that same day and appealed that decision via "kite" also dated May 23, 2011.  ECF No. 6-1 at 57.

On May 26, 2010, WSP Sergeant Meyer upheld Lieutenant Barker's decision which denied Mr. Wynn certain property items which were received at WSP in a box marked "contraband" because Mr. Wynn did not provide proof of ownership.  ECF No. 6-1 at 56.  On August 23, 2010 Mr. Wynn's Tort Claim (# 31074464) was denied.  The denial letter included the following statement: "As described in DOC 440.000 – Personal Property for Offenders; all authorized offender property will be retained at the offender's risk.  Offenders will be reimbursed through the tort claim process only if it is determined that property was lost or damaged through staff negligence".  ECF No. 6-1 at 49.

## STANDARD OF REVIEW

A court will dismiss a claim if it lacks sufficient factual material to state a claim that is plausible on its face.  Fed. R. Civ. P. 12(b)(6); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007).  A complaint that merely restates the elements of a cause of action and is supported only by conclusory statements cannot survive a motion to dismiss. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965-66.  When evaluating a motion to dismiss, a court is not required to accept as true factual allegations that are based on unwarranted deductions of fact or inferences that are unreasonable in light of the information provided in the complaint. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A court may, in its discretion, dismiss a prisoner's complaint with or without leave to amend.  *See Lopez v. Smith*, 203 F.3d 1122, 1124 (9th Cir. 2000).

On a motion to dismiss, material allegations of the complaint are taken as admitted and the complaint is to be liberally construed in favor of the plaintiff.  *Jenkins v. McKeithen*, 395

REPORT AND RECOMMENDATION - 6

U.S. 411, 421, 89 S. Ct. 1843, 1849 (1969), *reh'g denied*, 396 U.S. 869, 90 S. Ct. 35 (1969); *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir. 1977). Where a plaintiff is proceeding *pro se*, his allegations must be viewed under a less stringent standard than allegations of plaintiffs represented by counsel. *Haines v. Kerner*, 404 U.S. 519, 92 S. Ct. 594 (1972), *reh'g denied*, 405 U.S. 948, 92 S. Ct. 963 (1972). While the court can liberally construe a plaintiff's complaint, it cannot supply an essential fact an inmate has failed to plead. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992) (quoting *Ivey v. Board of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982)). A motion to dismiss only admits, for the purposes of the motion, all well pleaded facts in the complaint, as distinguished from conclusory allegations. *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir. 1976); *see also*, *Jones v. Community Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (conclusory allegations unsupported by facts are insufficient to state a claim under 42 U.S.C. § 1983).

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(c)(1) requires:

> The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

A motion to dismiss for failure to exhaust administrative remedies is properly brought as an unemunerated Fed. R. Civ. P. 12(b) motion. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) (citations omitted). When considering whether to dismiss a complaint for lack of exhaustion of administrative remedies, the court may look outside the pleadings to determine whether the issue has been exhausted. *Id.* at 1119-20. To survive a motion to dismiss for failure to exhaust, an inmate's claims must be both exhausted and timely. *McCollum v. California*

REPORT AND RECOMMENDATION - 7

*Dept. of Corrections and Rehabilitation*, 647 F.3d 870 (9th Cir. 2011). This Court determines whether an inmate's claim has been fully exhausted by referencing the prison's own grievance requirements. *Griffin v. Arpaio,* 557 F.3d 1117, 1120 (9th Cir. 2009).

**DISCUSSION**

A.  **Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act (PLRA) requires inmates to exhaust all administrative remedies before bringing a § 1983 claim. 42 U.S.C. § 1997e(a); *Griffin*, at 1119. To effectively exhaust his administrative remedies, an inmate must use all the formal steps of the prison grievance process. *Id.* Because the purpose of exhaustion is to give prison administrators a chance to resolve the issues, the inmate must exhaust each of his claims through grievances containing enough factual specificity to notify officials of the alleged harm. *Id.* at 1120. If an inmate fails to adequately exhaust his administrative remedies on a claim, that claim must be dismissed pursuant to an unenumerated Fed. R. Civ. P. 12(b) motion. *Wyatt*, at 1119-20. When considering whether to dismiss a complaint for failure to exhaust administrative remedies, the court may look outside the pleadings to determine whether the issue has been exhausted and may decide disputed issues of fact. *Id.*

Washington state prisoners are required to use the process set forth by the Washington Offender Grievance Program (OGP) to exhaust their claims prior to filing suit. *See Ngo,* 548 U.S. at 90–91 (proper exhaustion requires complying "with an agency's deadlines and other critical procedural issues because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). This means that a prisoner must file any grievances, complaints, and appeals he has concerning his prison conditions in the time, place, and manner required by the prison's administrative rules. *Pozo v. McCaughtry*, 286

REPORT AND RECOMMENDATION - 8

F.3d 1022, 1025 (7th Cir.2002); see also *Marella v. Terhune*, 568 F.3d 1024, 1028 (9th Cir.2009) (A prisoner must comply with a prison's procedural requirements).  Exhaustion under the PLRA must be "proper."  *Woodford v. Ngo*, 548 U.S. 81, 90–93, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006).   In order to properly exhaust, a prisoner must comply with a prison's grievance procedures.

An offender in DOC custody can file a grievance for a wide range of aspects of his incarceration, including for the actions of staff.  ECF No. 27, Exhibit 1, Declaration of Tamara Rowden.  The grievance procedure consists of four levels of review:

> Level 0 - Complaint or informal level.  The grievance coordinator at the prison receives a written complaint from an offender on an issue about which the offender wishes to pursue a formal grievance.  At this complaint level, the grievance coordinator pursues informal resolution, returns the complaint to the offender for rewriting, returns the complaint to the offender requesting additional information, or accepts the complaint and processes it as a formal grievance.
>
> Level I - Grievances against policy, procedure, or other offenders, and grievances processed as emergencies.  The local grievance coordinator is the respondent at this level.
>
> Level II - Appeal.  Offenders may appeal Level I grievances to this level.  Staff conduct grievances are initiated at this level.  All appeals and initial grievances received at Level II are investigated, with the prison superintendent being the respondent.
>
> Level III - Appeal.  Offenders may appeal all Level II responses except emergency grievances to Department headquarters in Tumwater, where they are reinvestigated.  Administrators are the respondents.

*Id.*, at ¶ 6.

DOC's Grievance Program Manager Tamara J. Rowden states that all of Mr. Wynn's allegations, except for his property claims, are grievable issues under the DOC grievance system. *Id.,* ¶ 10.  Her review of Mr. Wynn's grievance records shows that Mr. Wynn filed Grievance No. 1008401 as to Sgt. Dilday alleging staff misconduct, discrimination, and wrongful

REPORT AND RECOMMENDATION - 9

termination, but the grievance went no farther than Level 0.  The grievance was returned to Mr. Wynn to rewrite but he failed to do so.  Mr. Wynn filed other grievances regarding Sgt. Dilday -- Grievance No. 1012186 alleged discrimination and Grievance No. 1012187 alleged wrongful termination -- but neither of these grievances were timely filed and also went no farther than Level 0.  *Id.*, at ¶ 12.

Mr. Wynn does not dispute these facts or present any evidence to the contrary.  The undisputed evidence reflects that Mr. Wynn had access to a well-established grievance procedure but did not pursue grievances for the claims stated in his complaint.  He was obligated to pursue and complete the grievance process for each and every claim stated in his complaint prior to filing his federal lawsuit.  He made no effort to timely file proper grievances regarding the grievable claims stated in his Complaint.  Therefore, the undersigned recommends that all of his claims, except for his property claim (which is non-grievable), should be dismissed without prejudice.  See *Wyatt*, 315 F.3d at 1120 ("[t]he proper remedy, where a prisoner has failed to exhaust non-judicial remedies, is dismissal of the claim without prejudice.")

**B.      Property Claim**

Mr. Wynn asserts that WSP property room Sergeant Defendant Meyer violated his rights when he deprived Mr. Wynn of his property at WSP after it was transferred from AHCC (ECF No. 6 at ¶9; ECF No. 6 at 21), that Defendant Meyer asked Mr. Wynn to provide proof of ownership, then destroyed or mailed out property to which Mr. Wynn claimed to be entitled (ECF No. 6 at ¶21-22).   Attached to Mr. Wynn's Complaint are two 30-day notices informing Mr. Wynn that his property would be disposed of unless he provided proof of ownership in accordance with DOC Policy 440.000, (ECF No. 6-1 at 50-51) and a denial from the Office of Financial Management which found no basis to compensate him under his tort claim because

REPORT AND RECOMMENDATION - 10

"As described in DOC 440.000 – Personal Property For Offenders; all authorized offender property will be retained at the offender's risk.  Offenders will be reimbursed through the tort claim process only if it is determined that property was lost or damaged through staff negligence".  ECF No. 6-1 at 49.

Mr. Wynn fails to plead any facts that demonstrate which aspects of DOC Policy 440.000 either Defendant Meyer or Dilday failed to follow and fails to plead facts which demonstrate how such an unidentified failure to follow policy resulted in a violation of his constitutional rights.  Instead, Mr. Wynn simply concludes that their inaction violated both DOC policy and his constitutional rights.

Construed liberally in his favor, the foregoing facts fail to demonstrate that any defendant violated Mr. Wynn's due process rights.  In order to be entitled to relief for a due process violation, there must be a "protected liberty interest" at issue.  *Wolff v. McDonald*, 418 U.S. 539, 556-57, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974).  "The Fourteenth Amendment's Due Process Clause does not trigger the need for procedural protections in every instance involving an individual's deprivation of liberty or property at the hands of the state.  See, e.g., *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972), *Ingraham v. Wright*, 430 U.S. 651, 672 (1977).   Due process is implicated only when there is a liberty interest at stake. *Id*.

Moreover, a claim of the negligent or intentional unauthorized deprivation of property by state officials does not state a federal cause of action under §1983 if the plaintiff has an adequate post deprivation state remedy.  *Hudson v. Palmer*, 486 U.S. 517, 533 (1984); *Parrat v. Taylor*, 451 U.S. 527, 544 (1981) (overruled on other grounds in *Daniel v. Williams,* 474 U.S. 327) (1986)).  Washington law provides that prisoners, who believe that property of value belonging to them has been lost or damaged due to staff negligence, may file a claim pursuant to RCW

REPORT AND RECOMMENDATION - 11

4.92.100.  See also WAC 137-36-060.  If the claim is not resolved to the inmate's satisfaction, they may file suit once 60 days have elapsed.  RCW 4.92.110.  Therefore, Plaintiff's remedy for prison officials' alleged negligent and/or unauthorized acts with respect to property is in state court.

Because Washington State provides Plaintiff an adequate post-deprivation state remedy, his §1983 personal property claim lacks an arguable basis in law and the undersigned recommends that it should be dismissed.

## CONCLUSION

The undersigned recommends that Defendants' motion to dismiss (ECF No. 27) be **GRANTED** and that Plaintiff's claims, except his property claims, be **dismissed without prejudice** for failure to exhaust and that his property claims be **dismissed with prejudice** as Plaintiff has an adequate post-deprivation state remedy.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **November 2, 2012**, as noted in the caption.

**DATED** this  9th   day of October, 2012.

                                 Karen L. Strombom
                                 United States Magistrate Judge

REPORT AND RECOMMENDATION - 12